# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 05-2332-KHV |
| UNITED TRANSPORTATION UNION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Union Pacific Railroad Company ("Union Pacific") brings suit against United Transportation Union (the "Union") to compel arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et al. This matter is before the Court on Defendant United Transportation Union's Renewal Of Its Motion To Dismiss (Doc. #10) filed August 16, 2005 and defendant's Amended Motion To Dismiss (Doc. #16) filed November 2, 2005. For reasons stated below, the Court overrules defendant's motions.

## Case History

In this lawsuit, Union Pacific seeks an order which compels the Union to arbitrate claims which Union Pacific asserted in a previous suit before this Court, United Pacific Railroad Company v. Local #1409, United Transportation Union, et al., 03-2660-KHV. In that case, Union Pacific sued Local 1409, Union Transportation Union ("Local 1409") and Greg F. Haskin, Chairman of Local 1409. See Complaint (Doc. #1) filed December 29, 2003 in 03-2660-KHV. Union Pacific asserted that by not stopping union members from excessively using lay-offs during weekends and holidays in December of 2003, defendants violated Sections 2 First and 6 of the RLA, 45 U.S.C. §§ 152 First and 156. On September 21, 2004,

the Court sustained Local 1409's motion to dismiss for lack of subject matter jurisdiction, finding that plaintiff's claims involved a "minor dispute" and were subject to mandatory arbitration under the RLA. See Memorandum And Order And Order To Show Cause (Doc. #46) in 03-2660-KHV at 7-11. The Court, however, overruled Union Pacific's request to compel arbitration because the complaint did not assert a claim to compel arbitration and Union Pacific had not sought leave to amend the complaint to assert such a claim. See Memorandum And Order (Doc. #57) filed January 18, 2005 in 03-2660-KHV at 7. The Court further noted that the proper procedure would be for Union Pacific to file a separate lawsuit to compel arbitration. See id. at 7 n.2.

On March 15, 2005, Union Pacific filed a complaint against the Union in the United States District Court for the Eastern District of Missouri, Case No. 05CV00421, seeking to compel arbitration of the claims raised in Case No. 03-2660-KHV. See Complaint (Doc. #1). On April 25, 2005, the Union filed a motion to dismiss, arguing that (1) plaintiff failed to join an indispensable party; (2) plaintiff filed suit in the wrong venue; and (3) plaintiff failed to exhaust administrative remedies. See Doc. #2 in 05CV00421. On August 1, 2005, the United States District Court for the Eastern District of Missouri entered an order which transferred the case to this Court. See Opinion, Memorandum And Order (Doc. #6) in 05CV00421. The Missouri district court did not otherwise rule on defendant's motion. See id. On August 16, 2005, the Union filed a motion to dismiss which except for venue, re-asserted the same arguments which it raised in the motion which it filed in the Eastern District of Missouri (Doc. #2) in 05CV00421. See Defendant United Transportation Union's Renewal Of Its Motion To Dismiss (Doc. #10). On November 2, 2005, the Union filed an amended motion to dismiss, arguing that this case is moot in light of Union Pacific's subsequent efforts to arbitrate the matter. See Amended Motion To Dismiss (Doc. #16).

## Standards For Motions To Dismiss Under Rule 12(b)(7)

Under Rule 12(b)(7), Fed. R. Civ. P., the Court may dismiss a case for failure to join a necessary and indispensable party under Rule 19. The Court exercises discretion in deciding a Rule 12(b)(7) motion. Citizen Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1292 (10th Cir. 1994) (citing Navajo Tribe of Indians v. State of N.M., 809 F.2d 1455, 1471 (10th Cir. 1987)). Defendant bears the burden to produce evidence which shows the nature of the interest possessed by an absent party and that such party's absence will impair the protection of that interest. See Citizen Band, 17 F.3d at 1292. Defendant can satisfy this burden with affidavits of persons having knowledge of the interest as well as other relevant extra-pleading evidence. See id.

## Standards For Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support its claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Facts**

Plaintiff alleges the following facts:

A collective bargaining agreement ("CBA") between the Union and Union Pacific governs the terms and conditions of employment for brakemen and conductors on Union Pacific lines from Kansas City to Marysville, Kansas. Complaint (Doc. #1) filed March 15, 2005 in 05CV00421 ¶ 7. Subject to certain limitations, the CBA requires brakemen and conductors to accept work assignments 24 hours a day, seven days a week, including weekends and holidays. Id. ¶ 8. In addition, Union Pacific and the Union, through its designated local for the area, are parties to an agreement dated May 14, 2003, which states that brakemen and conductors on the Kansas City-Marysville lines are expected to work 21 to 23 starts per month. Id.

In December of 2003, a dispute arose between Union Pacific and the Union regarding the availability of brakemen and conductors on the Kansas City-Marysville lines under the May 14, 2003 agreement. Id. ¶ 9. Specifically, during and around Christmas of 2003, an extraordinarily high percentage of brakemen and conductors decided that they would not come to work, i.e. that they were "laying off" because of alleged personal illness or sickness. Id. As a result of the lay-offs, Union Pacific was required to hold a significant number of trains on the Kansas City-Marysville Line which negatively affected Union Pacific's ability to satisfy its customer service commitments, resulted in lost revenue and negatively affected the national economy. Id. ¶ 10.

On December 29, 2003, Union Pacific filed suit against Local 1409. Id. ¶ 11. Union Pacific alleged that by not stopping union members from excessively using lay-offs during December of 2003, defendant violated Sections 2 First and 6 of the RLA, 45 U.S.C. §§ 152 First and 156. Id. On

September 21, 2004, the Court sustained Local 1409's motion to dismiss for lack of subject matter jurisdiction, finding that plaintiff's claims involved a "minor dispute" and were subject to mandatory arbitration under the RLA. Id. ¶ 13.

On September 22, 2004, Union Pacific submitted a proposed arbitration agreement to the Union. Id. ¶ 14. On September 27, 2004, the Union requested Union Pacific to identify the issue(s) to be arbitrated. Id. ¶ 15. The next day, on September 28, 2004, Union Pacific suggested that the arbitration agreement identify the issues to be arbitrated as those issues raised in Union Pacific's complaint and the Union's counterclaim in Case No. 03-2660-KHV, with copies of relevant pleadings attached to the agreement. Id. ¶ 16. On September 30, 2004, an attorney for the Union responded as follows: "My clients have reviewed the [September 28, 2004] letter and are not agreeable to your client's proposal. They were fairly adamant on their position and I do not believe that further discussion will be fruitful." Id. ¶ 17. The Union continues to refuse to arbitrate the matters raised in Case No. 03-2660-KHV. Id. ¶ 21.

## Analysis

### I.     Failure To Join Necessary Party

The Union argues that Union Pacific has failed to join two necessary parties: Local 1409 and the General Committee of Adjustment ("GCA"). Under Rule 19(a), if a party is subject to service of process and joinder will not deprive the court of subject matter jurisdiction, the Court shall order the party to be joined if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations by reason of the claimed interest.

Rule 19(a), Fed. R. Civ. P. The Union asserts that Union Pacific could easily join the necessary parties. See Memorandum In Support Of Defendant United Transportation Union's Motion To Dismiss ("Defendant's Memorandum") (Doc. #3) filed April 25, 2005 in 05CV00421 at 5. Thus, the Court must decide only whether to order Union Pacific to join the parties and need not decide whether the parties are indispensable under Rule 19(b).[1]

The Union asserts that it is not a party to the agreement in dispute. It contends that the agreement is between Union Pacific and Local 1409, and that Richard Karstetter, General Chairperson of the GCA, approved the agreement with his signature. Union Pacific does not dispute that the agreement is with Local 1409, but it nevertheless contends that the Union is the proper party with whom it must arbitrate the dispute. See Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss (Doc. #4) filed May 19, 2005 in 05CV00421.

The Union responds that it has no authority to resolve minor disputes and that the GCA is the "only body with authority to handle claims and grievances (minor disputes) to final resolution." Defendant's Memorandum (Doc. #3) at 4. In support of its assertions, the Union provides the declaration of Karstetter, which states as follows:

---

[1] In deciding whether a party is indispensable under Rule 19(b), the Court applies a two-part analysis. See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1411 (10th Cir. 1996). First, it determines under Rule 19(a) whether the party is necessary and must be joined if feasible. Id. If the party is necessary but cannot be joined, the Court determines under Rule 19(b) whether the party is indispensable. Id. In order to conclude that a party is indispensable, the Court must find "in equity and good conscience" that the action should not proceed in the party's absence. Rule 19(b), Fed. R. Civ. P.; Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1259 (10th Cir. 2001).

6

>    2.    The GCA is a semi-autonomous body distinct from UTU International,[2] made up of the Local Chairpersons from each local under the jurisdiction of the GCA. It is headed by a general Chairperson.
>
>    3.    The General Chairperson is the highest on-property union officer and has final authority through the GCA to process, handle and resolve all claims and grievances arising under the agreements under the GCA's jurisdiction. My Committee has jurisdiction over agreements and issues arising on the UPRR-former Missouri Pacific Upper Lines. UTU International is not a party to my system or local agreements, including the May 14, 2003 Local 1409 Agreement.
>
>    4.    Local 1409, located in Kansas City, Kansas, is one of the locals under the jurisdiction of my Committee.

Declaration Of Richard Karstetter, Exhibit to Defendant's Memorandum (Doc. #3) at 5. Karstetter's declaration asserts that he has final authority to process, handle and resolve grievances which arise under the GCA's jurisdiction. The declaration, however, does not establish that the Union is not authorized to represent its local union in arbitration to resolve minor disputes. The Court will not dismiss the case on this ground.[3]

## II.    Failure To Exhaust Administrative Remedies

The Union argues that plaintiff has failed to exhaust administrative remedies under RLA Section 3(i)

---

[2]    Although the declaration does not so state, the Court assumes that UTU International refers to the Union.

[3]    Plaintiff does not explain why it sued Local 1409 in the previous suit and the Union in this suit. The Court offers no opinion whether plaintiff has sued the proper party to obtain the relief it seeks. Moreover, it appears that such determination would be a matter for the arbitrator to decide. See Daiei, Inc. v. U.S. Shoe Corp., 755 F. Supp. 299, 303 (D. Haw. 1991); Int'l Union of Operating Eng'rs, Local 150 v. Browning-Ferris Ind. of Ill., Inc., No. 85 C 6351, 1986 WL 1573, at *2 (N.D. Ill. Jan. 22, 1986).

7

First, 45 U.S.C. § 153(i) First.[4]  See Defendant's Memorandum (Doc. #3) at 7-8.  This argument raises a procedural issue for the arbitrator to decide.  See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-59 (1964); Indep. Ass'n of Cont'l Pilots v. Cont'l Airlines, 155 F.3d 685, 694-96 (3d Cir. 1998).

The Union also argues that plaintiff has failed to engage in the procedure mandated by RLA Section 3 Second, 45 U.S.C. § 153 Second.[5]  See Defendant's Memorandum (Doc. #3) in 05CV00421 at 7-8. The language of the statute, however, does not appear mandatory and the Union cites no authority to support that it is so.  Moreover, to the extent the statute may create a mandatory procedural requirement, whether plaintiff has complied raises a procedural issue for the arbitrator to decide.  See John Wiley, 376 U.S. at 557-59; Cont'l Airlines, 155 F.3d at 694-96.  The Union is not entitled to dismissal on these

---

[4]     RLA Section 3(i) First states as follows:
The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

45 U.S.C. § 153(i) First.

[5]     RLA Section 3 Second states, in part, as follows:
Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives . . . from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section.  In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with that arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board.
   *     *     *

45 U.S.C. § 153 Second.

grounds.

### III.   Whether Plaintiff's Claims Are Moot

The Union asserts that this case is moot because on August 23, 2005, Union Pacific filed a notice of intent to proceed to arbitration before the National Railroad Adjustment Board concerning attendance issues under the May 14, 2003 agreement.[6]  See Amended Motion To Dismiss (Doc. #16) filed November 2, 2005 at 2-4.  As an initial matter, the Union raises matters outside the complaint which the Court cannot consider on a motion to dismiss for failure to state a claim.  More importantly, however, the Union's argument raises a procedural issue for the arbitrator to decide.  See John Wiley, 376 U.S. at 557-59; Cont'l Airlines, 155 F.3d at 694-96.  The Union is not entitled to dismissal on this ground.

**IT IS THEREFORE ORDERED** that Defendant United Transportation Union's Renewal Of Its Motion To Dismiss (Doc. #10) filed August 16, 2005 and defendant's Amended Motion To Dismiss (Doc. #16) filed November 2, 2005 be and hereby are **OVERRULED.**

Dated this 10th day of March, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[6]   Although the Court does not reach the substance of this argument, it questions whether the Union brings it in good faith.  The notice of intent to proceed to arbitration clearly states that the claims in that proceeding involve (1) whether the May 14, 2003 agreement was canceled on March 10, 2005; and (2) whether the failure of union employees to work the prescribed number of starts during the month of June 2005 violated the May 14, 2003 agreement.  See Exhibit 2 to Amended Motion To Dismiss (Doc. #16).  This case involves the availability of workers under the May 14, 2003 agreement during and around Christmas of 2003.